UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DWIGHT JACKSON, JR.,

               Plaintiff,              Case No. 2:25-cv-69

v.                                 Honorable Paul L. Maloney

MICHAEL HAVENS et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff Dwight Jackson, Jr., initiated this action by filing his initial complaint (ECF No. 1) against the Michigan Department of Corrections (MDOC) in the United States District Court for the Eastern District of Michigan. Plaintiff subsequently paid the full filing fee. On March 26, 2025, Plaintiff filed a motion to amend his complaint. (ECF Nos. 14.) In an opinion and order (ECF No. 15), the Eastern District transferred the action to this Court for further proceedings.

In an order (ECF No. 18) entered on April 22, 2025, this Court noted that the Eastern District did not rule upon Plaintiff's motion to amend before transferring the action to this Court, and that Plaintiff had moved to amend to substitute the MDOC with seven individual Defendants. (*Id.*, PageID.7.) The Court granted Plaintiff leave to file an amended complaint within 21 days. (*Id.*) The Court received Plaintiff's amended complaint (ECF No. 21) on May 12, 2025.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lefevre, Nurmi, Jackson, and Reid. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against remaining Defendants Havens, Kover, and Kocha. Plaintiff's personal capacity Eighth Amendment claims against Defendants Havens, Kover, and Kocha remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility, as well as at the Charles E. Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan; the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan; and the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following personnel in their official and personal capacities: (1) RGC employees Edward Reid and Unknown Jackson; (2) NCF Physician Assistant (PA) Michael Havens and NCF Registered Nurse (RN) Unknown Kover; (3) AMF PA Matthew Lefevre and AMF RN Unknown Nurmi; and (4) MBP PA Joshua Kocha.

In his amended complaint, Plaintiff contends that Defendant Havens "ignored the fact that [Plaintiff has] medical injur[ies] [from] befor[e] he was incarcerated." (Am. Compl., ECF No. 21, PageID.14.) Defendant Havens ignored the fact that Plaintiff had been taking morphine for chronic pain. (*Id.*) Plaintiff alleges that he was "cut off of [his] medication and left to go into withdrawals

2

for weeks." (*Id.*) Plaintiff mentions that he saw Defendant Havens at NCF on August 30, 2024, and November 18, 2024. (*Id.*, PageID.15.)

Plaintiff contends further that Defendant Kover ignored his pain, gave Plaintiff a "handful of Motrin," and never told Plaintiff to not mix Motrin with his Celebrex. (*Id.*, PageID.14.) Instead, Defendant Kover told Plaintiff to have his Celebrex refilled. (*Id.*) Plaintiff contends that as a result of using Motrin with Celebrex, he experienced very bad stomach pains and also urinated and defecated blood. (*Id.*) Plaintiff states that he saw Defendant Kover on September 6, 2024. (*Id.*, PageID.15.)

Plaintiff goes on to allege that Defendant Lefevre "was very rude" and that he ignored Plaintiff's injuries. (*Id.*, PageID.14.) Defendant Lefevre never tried to relieve any of Plaintiff's pain and suffering; instead, he "talk[ed] down" to Plaintiff and refused to help. (*Id.*) Plaintiff states that when he saw Defendant Lefevre for two medical visits, he asked for injuries to be checked and Defendant Lefevre simply said "I will see another time, leaving [Plaintiff] in a state of pain and suffering with new injur[ies]." (*Id.*) Plaintiff indicates that he saw Defendant Lefevre on December 4 and 9, 2024, and that at the visit on December 9, 2024, Defendant Lefevre "just looked at [Plaintiff's] injury and told [the] RN to put [Plaintiff] on another time for a[n] appointment." (*Id.*, PageID.15.)

According to Plaintiff, Defendant Nurmi refused to give Plaintiff his medications on three occasions. (*Id.*, PageID.14.) However, Plaintiff only mentions two specific dates on which this occurred—December 31, 2024, and January 1, 2025. (*Id.*, PageID.15.)

Defendant Kocha ignored Plaintiff's need for pain medication. (*Id.*, PageID.14.) Plaintiff alleges that one of the medications that he was given by Defendant Kocha caused stomach upset, and that another medication caused constipation. (*Id.*) Defendant Kocha ignored Plaintiff's "many

other injur[ies]" and refused to give Plaintiff a cane. (*Id.*) Plaintiff alleges that Defendant Kocha was aware that Plaintiff had an injured foot, yet gave him nothing for pain and forced Plaintiff to walk around on his injured foot for over seven months. (*Id.*)

Plaintiff indicates that he saw Defendant Kocha on January 15, 2025, and Defendant Kocha "left [Plaintiff] in a state of pain with no meds." (*Id.*, PageID.15.) Plaintiff had an X-ray of his right foot taken on January 23, 2025. (*Id.*) He did not get the results until February 13, 2025, when he saw Defendant Kocha again. (*Id.*) Plaintiff saw Defendant Kocha again on March 19, 2024, and Plaintiff learned he had a scheduled MRI. (*Id.*) Plaintiff had the MRI on April 8, 2025, and received the results when he saw Defendant Kocha again on April 17, 2025. (*Id.*) Plaintiff mentions that during that visit, he learned that he has tenosynovitis. (*Id.*, PageID.16.) Plaintiff states that he is waiting to see a specialist and has not received any pain medication. (*Id.*) He claims that his back and knee injuries are "very painful" without medication. (*Id.*)

Plaintiff goes on to allege that Defendants Reid and Jackson "ignored MDOC policy" after Plaintiff's mother passed away and did not allow Plaintiff to see an RN, clergy member, or a psychiatrist. (*Id.*, PageID.15.) Plaintiff also avers that he was unable to see his mother "for the last time on video." (*Id.*) He mentions that this occurred on at RGC on August 14, 2024. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's amended complaint to assert Eighth Amendment claims for deliberate indifference to medical needs against all Defendants, and claims regarding violations of MDOC policy against Defendants Reid and Jackson. Plaintiff seeks monetary compensation. (*Id.*, PageID.17.)

## II.    Request for Counsel

Plaintiff asks the Court to appoint counsel to represent him in this matter. (*Id.*, PageID.16.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d

4

601, 604–05 (6th Cir. 1993). The Court may, however, ask an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Accordingly, Plaintiff's request for the appointment of counsel (Am. Compl., ECF No. 21, PageID.16) will be denied at this time.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

As noted above, Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may

6

be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks only monetary damages. (Am. Compl., ECF No. 21, PageID.17.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and any claim for monetary damages against Defendants in their official capacities fails to state a claim on which relief may be granted.

### B.    Personal Capacity Claims

#### 1.    Eighth Amendment Claims

The Court has construed Plaintiff's amended complaint to assert Eighth Amendment claims premised upon deliberate indifference to medical needs against all named Defendants.

The Eighth Amendment obligates prison authorities to provide medical care, including mental health care, to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702. Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words,

the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In his amended complaint, Plaintiff references pre-existing injuries, particularly back and knee injuries, as well as a recent diagnosis of tenosynovitis. For purposes of screening, the Court presumes that Plaintiff has set forth sufficient facts regarding the seriousness of his medical needs. The Court, therefore, will consider whether Plaintiff has alleged sufficient facts for the subjective prong for each named Defendant.

### a.    Defendant Havens

Plaintiff alleges that while incarcerated at NCF, he saw Defendant Havens on August 30, 2024, and November 18, 2024. (Am. Compl., ECF No. 21, PageID.15.) Plaintiff faults Defendant Havens for ignoring Plaintiff's pre-existing injuries and ignoring the fact that Plaintiff had been taking morphine for chronic pain. (*Id.*, PageID.14.) Plaintiff alleges that Defendant Havens "cut

[him] off of [his] medication and left [him] to go into withdrawals for weeks." (*Id.*) Plaintiff contends further that Defendant Havens allowed Plaintiff to experience withdrawal while ignoring Plaintiff's "plea for pain relief." (*Id.*) While Plaintiff has by no means proven deliberate indifference, taking his allegations as true, as the Court must at this stage of proceedings, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Havens on initial review.

### b.   Defendant Kover

Plaintiff alleges that he saw Defendant Kover at NCF on September 6, 2024, and that he was given Motrin at that appointment. (Am. Compl., ECF No. 21, PageID.15.) Plaintiff faults Defendant Kover for not advising Plaintiff not to take Motrin with his prescribed Celebrex. (*Id.*, PageID.14.) Instead, he avers, Defendant Kover told Plaintiff to make sure that he got his Celebrex refilled. (*Id.*) Plaintiff alleges that as a result of taking the medications together, he suffered "very bad stomach pain," and that he urinated and defecated blood. (*Id.*) Again, while Plaintiff has by no means proven deliberate indifference, taking his allegations as true, as the Court must at this stage of proceedings, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Kover on initial review.

### c.   Defendant Lefevre

Plaintiff sets forth that while incarcerated at AMF, he saw Defendant Lefevre on December 4 and 9, 2024. (*Id.*, PageID.15.) Plaintiff alleges that Defendant Lefevre refused to help him on December 4th, and that on December 9th, he "just looked at [Plaintiff's] injury and told [the] RN to put [Plaintiff] on another time for a[n] appointment." (*Id.*) Plaintiff contends that Defendant Lefevre was rude, talked down to him, and left Plaintiff "in a state of pain and suffering with new injur[ies]." (*Id.*, PageID.14.)

While the Court does not condone any alleged rude behavior on the part of Defendant Lefevre, Plaintiff's allegations are too conclusory to rise to the level of an Eighth Amendment

violation by Defendant Lefevre. Plaintiff does not set forth facts regarding the nature of the "new injur[ies]" he suggests he was left with as a result of Defendant Lefevre ordering that Plaintiff be scheduled for a separate appointment. Moreover, while Plaintiff alleges that he was left "in a state of pain and suffering," his complaint suggests that he has experienced some level of pain and suffering as a result of his medical conditions throughout his incarceration. Plaintiff fails to allege facts from which this Court could infer that Plaintiff was suffering any further adverse conditions and that Defendant Lefevre was simply deliberately indifferent to those conditions. Plaintiff's conclusory allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's Eighth Amendment claim against Defendant Lefevre will be dismissed.

### d.    Defendant Nurmi

With respect to Defendant Nurmi, Plaintiff alleges only that Defendant Nurmi did not give Plaintiff his medication on three occasions. (Am. Compl., ECF No. 21, PageID.14.) Although Plaintiff states that this occurred on three occasions, he only references two dates—December 31, 2024, and January 1, 2025. (*Id.*, PageID.15.)

Plaintiff's allegations regarding Defendant Nurmi are simply too conclusory to state an Eighth Amendment claim regarding the lack of medication on two or three occasions. Plaintiff provides no facts from which the Court could infer that Defendant Nurmi deliberately withheld Plaintiff's medication. Furthermore, Plaintiff does not set forth any facts suggesting that he suffered adverse effects from not receiving his medication. The facts alleged by Plaintiff suggest, at most, that Defendant Nurmi may have been negligent by not providing Plaintiff with his medication on two or three occasions. However, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *See Farmer*, 511 U.S. at 835. Accordingly, for these reasons, Plaintiff's Eighth Amendment claim against Defendant Nurmi will be dismissed.

### e.    Defendants Jackson and Reid

Plaintiff faults Defendants Jackson and Reid for not allowing him to see an RN, clergy member, or psychiatrist after his mother passed while Plaintiff was incarcerated at RGC. (Am. Compl., ECF No. 21, PageID.15.) The Court construes this allegation to assert Eighth Amendment claims premised upon a denial of mental health care.

Like Plaintiff's allegations concerning Defendant Nurmi, Plaintiff's allegations concerning Defendant Jackson and Reid are simply too conclusory to rise to the level of an Eighth Amendment violation. Plaintiff's complaint is devoid of any allegations suggesting that Defendants Jackson and Reid were aware that Plaintiff's mother had passed away, and that Plaintiff was suffering from any mental health crisis as a result. While the Court is sympathetic to the fact that Plaintiff lost his mother, Plaintiff fails to allege any obvious mental health effects from not being able to speak to a nurse, clergy member, or psychiatrist after her passing. Plaintiff's conclusory allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's Eighth Amendment claims against Defendants Jackson and Reid will also be dismissed.

### f.    Defendant Kocha

Defendant Kocha is the PA who has been responsible for Plaintiff's medical care during Plaintiff's incarceration at MBP. Plaintiff contends that Defendant Kocha ignored Plaintiff's need for pain medications, and that medications he did prescribe caused stomach pain and constipation. (Am. Compl., ECF No. 21, PageID.14.) Plaintiff alleges further that Defendant Kocha refused to give Plaintiff a cane, and that Plaintiff has been forced to walk on an injured foot for over seven months. (*Id.*) Plaintiff ultimately received a cane from Defendant Kocha's "boss." (*Id.*) Plaintiff mentions that during his incarceration at MBP, he received an X-ray of his right foot as well as an MRI, and that he was ultimately diagnosed with tenosynovitis. (*Id.*, PageID.15–16.) Plaintiff states

13

that he is awaiting a visit to a specialist but is still not receiving any medications for pain. (*Id.*, PageID.16.)

Plaintiff's allegations do suggest that Defendant Kocha has provided some level of care to Plaintiff during his incarceration at MBP. However, given Plaintiff's allegations concerning the lack of medication and a cane, as well as his allegation that Defendant Kocha prescribed medications that caused Plaintiff to experience stomach upset and constipation, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Kocha on initial review.

### 2.    Violations of MDOC Policy

The Court has also construed Plaintiff's amended complaint to assert claims premised upon violations of MDOC policy against Defendants Reid and Jackson. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants Reid and Jackson violated MDOC policy fails to state a claim under § 1983.

Furthermore, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants Reid and Jackson violated MDOC policy fails to raise a cognizable federal claim, and Plaintiff's § 1983 claims regarding the violation of policy will be dismissed.

14

## **Conclusion**

The Court will deny Plaintiff's request for appointed counsel. (Am. Compl., ECF No. 21, PageID.16.) Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint against Defendants Lefevre, Nurmi, Jackson, and Reid will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against remaining Defendants Havens, Kover, and Kocha. Plaintiff's personal capacity Eighth Amendment claims against Defendants Havens, Kover, and Kocha remain in the case.

An order consistent with this opinion will be entered.

Dated:  __May 20, 2025__            __/s/ Paul L. Maloney__
                                    Paul L. Maloney
                                    United States District Judge